UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Baker et al | Plaintiffs, | |
| v. | | Case No. 5:23-cv-04022-TC-TJJ |
| Watson et al | Defendants | |

<u>Plaintiffs' Opposition to Randall Watson's Motion to Dismiss</u>

**MOTION TO DISMISS AND FAILURE TO STATE A CLAIM DEFENSE ARE UNTIMELY**

Defendant Watson states he moves, again, to dismiss "pursuant to FED.R.CIV.P. 12." ECF 23. Watson's sequential motion to dismiss is untimely. *See* 5C Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, & Richard L. Marcus, Federal Practice and Procedure § 1388 (3d ed. 2002) ("The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading; conversely, a Rule 12 defense that becomes available because of new matter in the amended complaint may be asserted by motion"). A motion for more definite statement is "a motion under" Rule 12. The purpose of the Rule is "to prevent [] dilatory motion practice … a course of conduct that was pursued often for the sole purpose of delay." *Id.* at § 1384 (3d ed. 2022). Rule 12(g)(2) now bars Watson from bringing a Rule 12(b) motion after failing to include it in his more definite statement motion. That is because Rule 12(g)(2) refers to Rule 12 as a whole and not only to Rule 12(b). *See id.* ("Motions … for a more definite statement are motions under Rule 12 and thus clearly are within the language of subdivision (g)").

1

Then Watson's shrouded failure to state a claim arguments masquerading as plausibility deficiencies (ECF 24, p. 2 fn 3) is untimely irrespective of whether the motion itself is untimely.  To the extent that Watson attempts to raise a 12(b)(6) defense in this second motion directed to Counts 1-6,  that is untimely. Consequently, "the right to raise [Rule 12] defenses [and objections] by preliminary motion is lost when the defendant neglects to consolidate them in his initial motion." Wright, at § 1385.  Watson's second motion to dismiss is doubly untimely.

### WATSON'S SECOND MOTION IS FATALLY FLAWED

Watson misstates the agency "official capacity" analysis claiming because he is not a *member* of the Board of Education he has no authority. Watson Mem. p. 3, ¶8.  The question is not membership: rather is Watson *an agent* for the state?  Yes. Even the fact *he* is claiming Eleventh Amendment immunity admits that state agency.  Watson is sued in his official capacity and suit against Watson is a suit against the Board of Education, KSDE, and the state of Kansas.  *See Koontz v. Watson*, 283 F. Supp. 3d 1007 (D. Kan. 2018) (enjoining enforcement of K.S.A. 75-3740f).  Official capacity suits generally represent another way of pleading an action against the entity of which the officer is an agent. *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Watson is an agent for KSDE and the state of Kansas. *See Burrell v. Hampshire Cnty.*, 307 F.3d 1, 7 (1st Cir. 2002 (official-capacity suit "is tantamount to a suit against the entity of which the official is an agent").

Under Article 6, Section 4 of the Kansas Constitution Watson is an agent for the Board of Education ("The state board of education shall appoint a commissioner of education who shall serve at the pleasure of the board as its executive officer").

The Kansas State Board of Education is an elected executive agency of the Kansas state government, responsible for managing the state's public K-12 education.

Defendant Randall Watson does not analyze the Kansas State Department of Education ("KSDE") or the Board of Education connections to the special education regulations and statutes implicated in the Amended Complaint. Instead, he analyzes the issue as an individual. Watson theorizes he is his own Kansas agency. *See* Watson Mem. ¶8 ("*Commissioner* is not a member of the State Board, he has no authority to vote with the State Board or otherwise adopt administrative regulations, enforce administrative regulations, or make any determinations regarding a public school's compliance with state law"). Watson is an employee of the Board of Education. He makes the nonsensical argument that he is only an agent for himself – rather than KSDE, the Board of Education, or the state of Kansas.

Watson's disjointed argument does not contend that *KSDE* has no connections to the K.A.R. regulations, funding, or the interpretation of regulations and statues that schools (agencies) must follow. According to the Kansas State government website, "KSDE administers the state's governance of education, standards and assessments, special education services, child nutrition and wellness, title programs and services, career and technical education, and financial aid." https://portal.kansas.gov/services/education-and-training/

KSDE publishes a "Special Education Process Handbook" which it states the "Kansas Special Education Process Handbook was developed as a guidance document by the Kansas State Department of Education." On KSDE's website

(https://tinyurl.com/23hchz2n) KSDE states it publishes a Handbook to "provide guidance, resources and supports necessary for those professionals who work to improve results for exceptional children. The information provided in the Kansas Special Education Process Handbook attempts to clarify and define legal requirements of the law and regulations." This Handbook in Chapter 1 is what schools such as Blue Valley provide to parents as part of its "parental notification" of parent's rights. Kansas schools follow KSDE's training and guidance. Schools, including Blue Valley, as well as the plaintiff Homeschools, must adhere to the KSDE regulations and as interpreted by KSDE in its guidelines.

**NON-ACCREDITED SCHOOLS ARE LEGAL ENTITIES AND IF NOT PLAINTIFFS BAUMGARTEN AND BAKER CAN REPRESENT THOSE INTERESTS**

Watson contends that the non-accredited registered homeschools Baumgarten Academy and Heritage House do not have the capacity to be sued or to sue. Mem. p. 7. In order to be a litigant, the litigant must actually exist. It cannot exist if it "is merely a name." *Isaac v. Mount Sinai Hospital*, 3 Conn. App. 598, 600, *cert. denied*, 494 A.2d 904 (1985). KSDE recognizes each plaintiff school as a bona fide private *school* meeting the definition of a private school in the state of Kansas. These homeschools are not mere names or alter egos but are organizations with officers and official custodians recognized by KSDE.

Homeschooling takes place under Kansas' private school law. There is no requirement that "homeschools" take place in a residence or for that matter be established by a parent. It can be created as an organization by anyone or anything operating at any location the Non-Accredited Private School chooses. Homeschools

4

operating as private schools must register their homeschools with the State Board of Education and provide instruction for a period of time "substantially equivalent" to that of public schools. *See* K.S.A. 72-1111(a)(2). A non-accredited elementary or secondary private school is one that satisfies the state's compulsory school attendance laws, but which is not accredited by the State Board of Education. Non-Accredited Private schools are not subdivisions, agencies, or departments of governmental entities. Watson claims there are no facts to support this capacity but he is wrong. In KSDE's regulations for homeschools it requires a very specific requirement: a records custodian. See Doc. 13, ¶¶ 21-22.

> 21. The Department requires all homeschools to designate an Official Custodian or Records Information which both Baumgarten Academy and Heritage House have done.
> 22. Under K.S.A. 72-4345 the "Official custodian" means "any officer or employee of a private elementary or secondary school who is responsible for the custody and maintenance of pupil records."

"Official custodians" are designated as either an "officer" or "employee" of the private school. KSDE was careful to treat it as an entity subject to the Family Educational Rights and Privacy Act (FERPA). That would have to be an entity that kept records and possessed federal obligations under FERPA – clearly each could be sued. And in creating the category of on non-accredited private school" KSDE recognized the school would handle student records. The KSDE website goes into great detail about FERPA student records and remedies. https://tinyurl.com/5xbkdkdt. Under the Kansas scheme, Accredited and Un-Accredited Private Schools are subject to this. By doing this KSDE makes

homeschools a "LEA" which must annually notify parents and eligible students of their rights under FERPA. 34 CFR § 99.7.

The Amended Complaint provides other facts that demonstrate under Kansas law a registered Kansas Homeschool is an "organization" under the laws of Kansas and has sufficient capacity to sue: Doc. 13, ¶¶ 18-20:

> 18. Plaintiff schools Baumgarten Academy and Heritage House were provided registration numbers for their respective homeschools located in Kansas by the Kansas Department of Education as non-accredited private schools registered with the Kansas Department of Education.
>
> 19. All private schools recognized by the Kansas Department of Education are legal entities. Under K.S.A. 72-4345, a Kansas nonaccredited private school is an organization organized and operating under the laws of Kansas. (Exhibit E).
>
> 20. The statute defines "Private elementary or secondary school" to mean "an organization which regularly offers education at the elementary or secondary level and attendance at which satisfies the compulsory school attendance laws of this state, but which is not accredited by the state board of education."

The plaintiff homeschools Baumgarten Academy and Heritage House are legal entities that have capacity to sue. The Court can take judicial notice that Heritage House is incorporated in the state of Kansas (Business Entity ID Number: 6152300) and is a 501 tax exempt organization. No. 20-8303650. Even if the homeschools were not, their custodian plaintiffs have sufficient standing to represent those interests.

Watson claims the analysis is confined to state law but he is wrong. Rule 17(b)(3)(A) encodes the principle that, in cases asserting a federal right, the forum state cannot prescribe qualifications of suitors in a federal court. Thus, the question is not whether the two homeschools are asserting a substantive federal right but whether the action is enforcing a federal right. *See Univ. of Texas at Austin v. Vratil,*

6

96 F.3d 1337, 1339 (10th Cir. 1996) ("The Federal Rules, however, allow [unincorporated] associations such as NCAA to be sued in their own name in federal court for purpose of enforcing a federal right"); *Kauffman v. Anglo-American School of Sofia*, 28 F.3d 1223, 1225 (D.C.Cir.1994) (party status governed by federal law). A corporation is an artificial entity that can only act through agents, cannot appear *pro se*, and must be represented by counsel. *Rowland v. California Men's Colony*, 506 U.S. 194, 201-02 (1993) ("An artificial entity has the capacity to sue or be sued in federal court… and, in some circumstances, even when it does not)."

Watson poses a most odd scenario: KSDE recognizes these two homeschools each as a bona fide school; parents can satisfy the compulsory school requirements by homeschooling in these registered homeschools; correspondingly have special education services provided to their students – yet these same registered homeschools are non-existent for the purposes of redress in the court system, equal funding, or equal treatment under the law. In his briefing Watson treats homeschools as Children of a Lesser God: a unequal two tier school system. For the public schools, they have every right to sue and protect their rights yet for the non-accredited private school they can be loaded with responsibilities albeit with no voice or right of redress segregated to different public funding drinking fountains – with only one that provides water. Watson's arguments are not equitable in failing to recognize the federal rights at play.

**EDUCATIONAL FUNDING**

Watson seeks immunity but provides no analysis to waiver. The Amended Complaint alleges Kansas unconstitutionally discriminates in its funding of special

7

education services not only in the public school arena but in the private school setting. A rationale review basis is not appropriate for many reasons including the fact these defendants have a discriminatory purpose. *See Washington v. Davis*, 426 U.S. 229, 241 (1976). Under the K.A.R. regulations, no state or federal funding can be used for providing special education services, under any circumstances, in a religious or religiously ideological setting (must be "provided in a secular and nonideological manner"). The regulations go further in mandating that all special education services in a sectarian school environment must be provided by a teacher controlled by the state. These restrictions violate the IDEA, the First Amendment and the fundamental right of a parent to raise their child according to their religious beliefs.

The plaintiffs have sought relief that this Court "declare the Defendant's actions and omissions to be violative of IDEA, Section 504, and United States Constitutional law." Doc. 13, p. 45. Plaintiffs have alleged they have been denied special education funding regarding non-public schools. *Id.* at ¶¶ 2, 17, and 30. *See* 42 U.S.C. § 2000d-7(a)(1) ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act ..."); *Robinson v. Kansas*, 295 F.3d 1183, 1190 (10th Cir. 2002) (joining sister circuits in holding that states and state entities waive sovereign immunity by accepting federal financial assistance as specified in 42 U.S.C. § 2000d-7).

Regarding that, KSDE does not enjoy immunity. Kansas "has chosen to accept IDEA funds, and has adopted rules to comply with IDEA's requirements accordingly."

*Ellenberg v. New Mexico Military Inst.,* 478 F.3d 1262, 1270 (10th Cir. 2007). Kansas can be held responsible for failing to provide services to disabled children. *Chavez ex rel. M.C. v. New Mexico Pub. Educ. Dep't,* 621 F.3d 1275, 1280 (10th Cir. 2010). Accordingly, the plaintiffs' IDEA claims against Kansas are proper, because Kansas has waived sovereign immunity under the IDEA.

**PROSPECTIVE INJUNCTIVE RELIEF IS AVAILABLE AGAINST KSDE AND THE STATE OF KANSAS**

Prospective injunctive relief is available against KSDE. *Turner v. Nat'l Council of State Boards of Nursing, Inc.,* No. 11-2059-KHV, 2012 WL 1435295, at *15 (D. Kan. Apr. 24, 2012); *Koontz v. Watson; Ex Parte Young*, 209 U.S. 123 (1908). See *Rounds v. Clements*, 495 F. App'x 938, 941 (10th. Cir. 2012)(*Monell* "has no applicability" to *Ex Parte Young*). Under this standard, the plaintiffs only need to show that a causal nexus between KSDE's conduct or inaction – regarding the application of K.A.R. 91-40-48, which implements K.S.A. 72-3463, in conjunction with the special needs requirements and the compulsory school attendance requirements. It is KSDE's K.A.R. policies, training, and guidance that are connected to the financing and anti-religious special education delivery of services that cause past, present, and future harm to the plaintiffs. As demonstrated in the facts, KSDE is intimately involved in financing, the distribution of special education funding, as well as the creation and enforcement of its regulations. And this includes "private schools" including homeschools. Homeschools are entirely a creation of KSDE and all of its requirements. There are numerous causal connections to KSDE's funding of special

9

education cojoined with its sectarian sterilizing of religion regulation in K.A.R. 91-40-48 to a plaintiff's respective injuries.

**KANSAS REQUIREMENTS NOT IMPOSED BY THE IDEA OR THE U.S. CONSTITUTION**

To the extent defendant Watson's arguments defend the KSDE regulations and statutory framework, his interpretations are incorrect. Starting preliminarily with this analysis: Kansas imposes regulations and policies not required by the Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 or the U.S. Constitution. First, exceptional children attending private schools are entitled to a Free Appropriate Public Education through an IEP, upon request. K.S.A. 72-3462 and K.A.R. 91-40-45(c).  Second, K.S.A. 72-3421 imposes a requirement not required by the IDEA: that "it shall be the duty of the parent of each exceptional child to require such child to attend school to receive the special education and related services which are indicated on the child's IEP or to provide for such services privately."  Third, nothing in the IDEA or the U.S. Constitution require that special education services be provided in a "secular and nonideological manner" (K.A.R. 91-40-48(c)(2)) or that they cannot be provided  "in connection with religious courses, devotional exercises, religious training, or any other religious activity." K.S.A. 72-3463.  KSDE imposes funding restrictions to schools based upon its religious discriminatory K.A.R. 91-4048(c)(2) implementing K.S.A. 72-3463.   When interpreted together, Kansas imposes unconstitutional conditions – a poison pill duty each parent must swallow with its mandated religiously sterile speech and withholding of benefits – and as long the exceptional child is subject to the special needs compulsory school mandate.  In

conjunction with those conditions comes restrictions to funding of special needs services in the private sectarian school.

Under K.A.R. 91-40-43 (Services to private school children) it states that:

(a) Consistent with the number and location of private school children in the school district, each board shall provide special education and related services to this group of children in accordance with K.A.R. 91-40-43 through 91-40-48. Each board also shall provide services to gifted children who reside in the district and are enrolled in a private school.

Pursuant to K.A.R. 91-40-48 (Use of funds and equipment) it states:

(a) Subject to subsection (d), an agency may use state and federal funds to make personnel available at locations other than at its facilities to the extent necessary to provide special education and related services to exceptional children enrolled in private schools, if those services are not normally provided by the private schools.
(b) Subject to subsection (d), an agency may use state and federal funds to pay for the services of an employee of a private school to provide special education and related services if both of the following conditions are met:
(1) The employee performs the services outside of the employee's regular hours of duty.
(2) The employee performs the services under public supervision and control.
(c) (1) Subject to subsection (d), an agency may use state and federal funds to provide for the special education and related services needs of exceptional
children enrolled in private schools, but shall not use those funds for either of the following purposes:
(A) To enhance the existing level of instruction in the private school or to otherwise generally benefit the private school; or
(B) to generally benefit the needs of all students enrolled in the private school.
(2) Each agency shall ensure that special education and related services provided to exceptional children enrolled in private schools are provided in a secular and nonideological manner.
(d) An agency's authority to use federal funds under this regulation shall be limited to providing special education and related services to children with disabilities.
(e) An agency shall not offer or maintain classes that are organized separately on the basis of public or private school enrollment or the religion of the students, if the classes offered to students are provided at the same site and the classes include students enrolled in a public school and students enrolled in a private school.
(f) (1) An agency shall keep title to, and exercise continuing administrative control over, all property, equipment, and supplies that are acquired by the agency to be used for the benefit of exceptional children enrolled in private schools.

There are many connections pled. "Blue Valley will not make FAPE available to [S.B.] during his religious training and religious activities irrespective of whether [S.B.] attends public, homeschooling, or private schooling." Doc. 13, p. 50. Blue Valley takes this position because its policies are based upon the mandatory regulation of KSDE contained in K.A.R. 91-40-48, which implements K.S.A. 72-3463. That is a causal nexus. KSDE procreates these requirements upon all schools of every type. All public schools in Kansas are required to participate in the state's accreditation process, which is overseen by KSDE. KSDE oversees "Non-Accredited Private Schools" in Kansas including homeschools. KSDE regulates homeschools. https://tinyurl.com/nhjsrnzz. Watson has authority over all Kansas private schools.

"Once a student with a disability is placed, BV is responsible for reimbursing the nonpublic school the cost of tuition and special education and related services. BV receives its federal and state special education funding from Kansas. *See* 20 U.S.C. § 1413(a). Doc. 13, ¶ 49. The plaintiff Homeschools seek to be treated equally regarding the distribution of special education funding for disabled students. The "special education" provided under IDEA "means specially designed instruction, at no cost to parents, to meet the unique needs of a child with a disability, including- (A) instruction conducted in the classroom, in the home, in hospitals and institutions, and in other settings; and (B) instruction in physical education." 20 U.S.C. § 1401(29); see also 34 C.F.R. 300.39(a) (defining "special education")." Doc. 13, ¶ 70.

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be

excluded from the participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To state a discrimination claim under the Rehabilitation Act, plaintiff must show that: 1) she is disabled under the Act; 2) she would otherwise be qualified for the job; 3) the program receives federal financial assistance; and 4) the program has discriminated against the plaintiff. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1262 (10th Cir. 2010).

## PLAINTIFFS EACH HAVE STANDING

Watson repeats his argument that "he" – as opposed to KSDE or the State – has nothing to do with the enactment or enforcement of KSDE's regulations or the State of Kansas' statute. Mem. p. 6. Watson makes the remarkable statement that the "statutes and regulations are not even directed at Plaintiffs…." *Id.* p. 7. Watson construes K.S.A. 72-3463 as only applying to public school districts providing special needs services. Mem. p. 9 ("K.S.A. 72-3463… deal with how *public school districts* provide services and do not restrict Plaintiffs in any manner") (emphasis added). But K.S.A. 72-3463 contains no such restriction limiting its application to public – as opposed to private – schools. Rather, it is all inclusive with no restrictions to a category of school:

> **72-3463. Same; provision in connection with religious activity prohibited.** No special education services shall be provided in connection with religious courses, devotional exercises, religious training, or any other religious activity.

"No special educations services shall be provided" applies in every context including parents and private schools (accredited and non-accredited homeschools) contrary to Watson's errant statutory interpretation. Watson goes on to contradict

13

that interpretation by including private schools: KSDE regulations "govern how certain services can be provided by a public school district, to students attending private schools" Mem. p. 7. Even then public and private schools are not all that this governs – it governs the <u>parent's private duty to provide special needs services</u>. K.S.A. 72-3421 obligate parents of exceptional students to ensure the provision of special education services for their child – either through their local public school or "privately." More precisely, the 72-3421 is explicitly directed at the plaintiff parent:

> (a) Except as otherwise provided in this section, it shall be the duty of the parent of each exceptional child to require such child to attend school to receive the special education and related services which are indicated on the child's IEP or to provide for such services privately.
> (b) The provisions of subsection (a) do not apply to gifted children or to parents of gifted children.

K.S.A. 72-3421 cannot be read in isolation from either K.A.R. 91-4048(c)(2) or K.S.A. 72-3463. Both apply as to homeschools and the parent's imposed duty in how to provide the special needs services under all circumstances including "privately."

## INJUNCTIVE RELIEF CAN BE AFFORDED

Watson admits a connection and desires to enforce the unconstitutional conditions: claiming an injunction would "foreclose the investigation and enforcement by the Commissioner, to the extent he is charged to do so, future complaints that may arise about an agency violating state or federal special education law or regulation." Mem. p. 10.[1] Watson would be enjoined from enforcement of the religiously discriminatory funding and denial of special needs services based upon K.A.R. 91-4048(c)(2) and K.S.A. 72-3463. KSDE tells schools and school boards to adhere to

---

[1] In making that argument Watson implicitly contends K.A.R. 91-4048(c)(2) and K.S.A. 72-3463 are Constitutional and can be enforced.

14

K.A.R. 91-4048(c)(2) and K.S.A 72-3463 in its special education handbook. That should be enjoined. This Court can enjoin KSDE from doing many things.

e. Find that K.A.R. 91-4048(c)(2)'s requirements on special education and related services being provided in a secular or nonideological manner violate the Free Speech and Exercise Clause of the First Amendment to the United States Constitution of these plaintiffs and for anyone subject to the Kansas Special Needs statutory framework;
f. Find that K.S.A. 72-3463 requirement that special education and related services cannot be provided "in connection with religious courses, devotional exercises, religious training, or any other religious activity" and K.A.R. 91-4048(c)(2) violate the Free Exercise Clause of the First Amendment to the United States Constitution.
g. Declare that, as referenced in K.A.R. 91-40-41 (Private School Placement), an agency, including Blue Valley, does not make free appropriate public education (FAPE) available to an exceptional child when the agency restricts FAPE pursuant to the conditions stated in K.S.A. 72-3463 or K.A.R. 91-4048(c)(2).
h. Declare that the Kansas Education Code's requirements and restrictions violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution;
i. Declare that K.S.A. 72-3463 and K.A.R. 91-4048(c)(2) are unconstitutional both on their face and as applied to the plaintiffs.
j. Declare that the requirement of K.S.A. 72-3421 stating "it shall be the duty of the parent of each exceptional child to require such child to attend school to receive the special education and related services which are indicated on the child's IEP or to provide for such services privately" is unconstitutionally vague and violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.
k. Issue preliminary and permanent injunctive relief prohibiting Defendants from enforcing K.S.A. 72-3463, K.S.A. 72-3421, or K.A.R. 91-4048(c)(2)

/s/Linus L. Baker KS 18197
6732 West 185th Terrace
Stilwell, Kansas 66085
Telephone: 913.486.3913
Fax: 913.232.8734
Email: linusbaker@prodigy.net
Attorney for the plaintiffs

**CERTIFICATE OF SERVICE**

On this 24th day of June, 2023, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.
/s/Linus L. Baker
Linus L. Baker