UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| Baker et al | Plaintiffs, | No. 5:23-cv-04022-TC-TJJ |
| v. | | PLAINTIFFS' REPLY TO SCHMIDT OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION |
| Watson et al | Defendants | |

**A. 20 U.S.C § 1412(A)(10)(VI)(II) PRESENTS NO COMPELLING STATE INTEREST**

Contrary to Defendant Schmidt's contention, "the Kansas framework" does not "implement federal law." ECF 32, p. 6, fn.2.  Kansas' participation is voluntary.  There is no federal law imposing a duty upon parents to privately provide, at the parent's own cost, special needs services.  There is no federal requirement for the enactment of K.S.A. 72-3463, which is in no way the equivalent in scope or purpose of 20 U.S.C § 1412(A)(10)(VI)(II ).  Schmidt, as does defendant Watson, contends that 20 U.S.C § 1412(A)(10)(VI)(II) presents a compelling interest for Kansas' enactment of K.S.A. 72-3463 and K.A.R. 91-40-48(c)(2) but he is dead wrong for many reasons.[1]  Contrary to Schmidt's sky-is-falling claim, finding those Kansas state provisions unconstitutional would not put in jeopardy federal special education funding.  Schmidt bemoans the fact Kansas provides school choice but then also requires the delivery of its special needs services by a government controlled teacher.  Kansas did that to itself.  Schmidt then claims public school teachers would be "forced to provide religiously infused special education services in Plaintiff's homeschools." ECF 32 p.6.  Schmidt supports this assertion citing cases using the abrogated *Lemon* test.[2]  Schmidt harkens to the

---

[1] Plaintiff incorporates her reply response to the defendant Watson.

[2] *Lemon* was "long ago abandoned" by the Supreme Court and explicitly overruled in

1

overruled[3] *Wolman v. Walter*, 433 U.S. 229 (1977) decision using *Lemon* where purportedly using public school employed teachers in a religious curriculum was thought to subsidize religion and was an Establishment violation as Schmidt now theorizes.[4] Schmidt claims that secular special needs services are converted from its secular purpose and then become "religiously infused" when delivered in the sectarian general education curriculum – i.e. "in connection with" all of the activities K.S.A. 72-3463 prohibits. Schmidt is absolutely wrong relying upon the *Lemon* test. The secular special needs services remain secularly purposed and are not converted in this fashion because of a Kansas school choice to utilize a religious general education curriculum. Schmidt avows he will not treat sectarian private schools on par with other secular schools because he is compelled to by K.S.A. 72-3463. Schmidt's *de facto* "second class" interpretation where he claims he can deliver special needs services unequally (providing the full benefit of services to students in secular public or secular private schools but not to those seeking to obtain the full benefit of the services in a sectarian general education curriculum) is unconstitutional. Schmidt makes an entanglement argument claiming that government controlled teachers would be "expressing Plaintiffs' religious message or beliefs under the guise

---

favor of a test focusing on "historical practices and understandings" in *Kennedy v. Bremerton Sch. Dist.*, 142 S. Ct. 2407, 2427-28 (2022); *Groff v. DeJoy*, --- S. Ct. ---, 2023 WL 4239256, at *7 n.7 (June 29, 2023) (unanimously recognizing *Lemon* as "now abrogated" by *Kennedy*).

[3] *Mitchell v. Helms*, 530 U.S. 793 (2000).

[4] Invalidating a law allowing the use of public funds to transport students from faith-based schools to field trips by categorizing such activities as curricular in nature and viewing them as instructional rather than non-ideological secular services.

of providing special education services." ECF 32, p. 6. Again, that is Kansas' self-inflicted problem by removing the parent's right to choose her own instructor. And this skewed religious infusion view is wrong. The secular purpose remains neutral and secular despite being used in all of the activities 72-3463 prohibits. In *Mitchell*, Louisiana was faced with a federal program which required "services, materials, and equipment" be provided to private schools as "secular, neutral, and nonideological." *Mitchell* at 802. The *Mitchell* court held that Chapter 2 statute was constitutional but did not prohibit, as K.S.A. 72-3463 explicitly does, services to students at private sectarian schools during religious activities and religious curriculum. Under Schmidt's interpretation, the *Zobrest*[5] deaf student's public-school-paid interpreter would be providing Schmidt's so-called "religiously infused" interpreter services while the student was helped during his Catechism class curriculum. But contrary to Schmidt, the secular and neutral services remain that despite being used for religious purposes or uses. The interpreter was not, even during Catechism, "inculcating any religious messages" even though she was interpreting Catechism. Under *Carson*, there is no distinction between the religious content of aid and the religious use of that aid. "The religious nature of a recipient should not matter to the constitutional analysis, so long as the recipient adequately furthers the government's secular purpose." *Mitchell* at 825. A "government interpreter does not herself inculcate a

---

[5] *Zobrest v. Catalina Foothills School District*, 509 U.S. 1, 113 S.Ct. 2462 (1993) (public school providing a sign-language interpreter to a deaf student at a Catholic high school as part of a federal program for the disabled as a result of parent's private choice).

religious message – even when she is conveying one." *Id.* at 822. Schmidt's interpretation of the federal statute is dead wrong in his attempt to justify K.S.A. 72-3463.

### B. FACIAL CHALLENGE: FACTS ARE UNCONTROVERTED

The injunction motion presents a facial challenge[6] to the combination of Kansas' special needs statutory framework. An evidentiary hearing is not necessary to resolve Plaintiff's motion because the parties have not requested a hearing and the material facts are not in dispute. *See Reynolds & Reynolds Co. v. Eaves*, 149 F.3d 1191 (10th Cir. 1998). Defendant Schmidt conceded the essential facts in this case in his Answer to the Amended Complaint. Terri is S.B.'s parent, S.B. currently has an I.E.P., is 8 years old, resides in the Blue Valley school district, and both are subject to the compulsory school requirements including K.S.A. 72-3463. *See* Schmidt Answer, ECF 26, ¶5. Schmidt admits S.B.'s right to and need for special needs services. (¶¶ 147-150). Schmidt admits he "deactivated" S.B.'s enrollment (Id., ¶6) and did not investigate whether S.B. was receiving special needs services. (¶10); that S.B.'s parents continued to re-enroll S.B. after being unenrolled (¶¶11-14); reside in school district (¶16). Schmidt did not controvert the fact that the homeschools are registered with the Kansas Department of Education and that they seek to educate special needs students. (¶¶18-23). See ¶50 (Schmidt has communicated to Terri that

---

[6] A state law that on its face categorically excludes a group of people from a public benefit because of religion is the textbook definition of an injury in fact for standing purposes. These allegations demonstrate S.B. and Terri's standing and harm irrespective of the homeschools. Where multiple plaintiffs bring a lawsuit, standing exists where "at least one plaintiff [has] standing to sue." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2565 (2019).

4

"Blue Valley will not make FAPE available to [S.B.] during his religious training and religious activities irrespective of whether [S.B.] attends public, homeschooling, or private schooling"). Plaintiffs have demonstrated irreparable harm.

C. **KANSAS GIVES PARENTS A RIGHT TO DICTATE THE CURRICULUM**

Schmidt muddles the distinction between the content of S.B.'s I.E.P. (which is not at issue in this case) with a general education curriculum. Terri simply asks that those designated I.E.P. services be provided to S.B. during his religious general educational curriculum which K.S.A. 72-3463 prohibits. Schmidt claims that the IDEA does not provide parents with the "authority to dictate the curriculum." ECF 32 p.10 (parents "never get to dictate the curriculum") but that is a red herring. The IDEA is silent on parents choosing a general educational curriculum because state law determines those educational curriculum choices. Curriculum and the content of the I.E.P. are two distinct things. Kansas parents are given the right to dictate the *general education curriculum* her child receives given to her by Kansas school choice. Schmidt thus doubles down on vowing never to provide push-in special needs services[7] in a religious general educational curriculum legally chosen by a plaintiff parent.

| | |
|---|---|
| /s/Linus L. Baker KS 18197<br>6732 West 185th Terrace<br>Stilwell, Kansas 66085<br>Telephone:    913.486.3913<br>Fax:    913.232.8734<br>Email: linusbaker@prodigy.net<br>Attorney for the plaintiffs | **CERTIFICATE OF SERVICE**<br><br>On this 14th day of July, 2023, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.<br>/s/Linus L. Baker<br>Linus L. Baker |

---

[7] ECF 13, ¶¶29-31, 86, 89-91 (describing preferred "push-in" services.

5