# In the United States District Court
## for the District of Kansas

――――――――――

Case No. 23-cv-04022-TC-TJJ

――――――――――

TERRI E. BAKER, ET AL.,

*Plaintiffs*

v.

RANDALL D. WATSON, ET AL.,

*Defendants*

――――――――――

## MEMORANDUM AND ORDER

Terri Baker, CarrieAnn Baumgarten, and two homeschools sued Randall Watson, Kansas Commissioner of Education, and Mark Schmidt, Assistant Superintendent of Special Education for Blue Valley School District. Doc. 13. Plaintiffs seek special education benefits, *id.*, and request a preliminary injunction guaranteeing as much, Doc. 21. Watson moves to dismiss the claims against him. Doc. 24. Baker also appealed a state administrative decision, and Schmidt seeks judgment on the administrative record for that claim. Doc. 65. For the following reasons, Watson's motion to dismiss, Doc. 23, and Schmidt's motion for judgment on the administrative record, Doc. 65, are granted, and Plaintiffs' motion for a preliminary injunction, Doc. 21, is denied.

### I

### A

There are a variety of requests pending. Each has its unique standard.

**1.** A federal district court may grant a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, the

complaint need only contain "a short and plain statement … showing that the pleader is entitled to relief" from each named defendant. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Two "working principles" underlie this standard. *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). First, a court ignores legal conclusions, labels, and any formulaic recitation of the elements. *Penn Gaming*, 656 F.3d at 1214. Second, a court accepts as true all remaining allegations and logical inferences and asks whether the claimant has alleged facts that make his or her claim plausible. *Id.*; *see also Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. ---, No. 22-842, 2024 WL 2751216, at *9 (U.S. May 30, 2024) (rejecting a conclusion reached only "by taking the allegations in isolation and failing to draw reasonable inferences in the [plaintiff's] favor").

A claim need not be probable to be considered plausible. *Iqbal*, 556 U.S. at 678. But the facts, viewed in the light most favorable to the claimant, must move the claim from conceivable to plausible. *Id.* at 678–80. The "mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plausibility is context specific. The requisite showing depends on the claims alleged, and the inquiry usually starts with determining what the plaintiff must prove at trial. *See Comcast Corp. v. Nat'l Assoc. of African Am.-Owned Media*, 140 S. Ct. 1009, 1014 (2020). In other words, the nature and complexity of the claim(s) define what plaintiffs must plead. *Cf. Robbins v. Oklahoma*, 519 F.3d 1242, 1248–49 (10th Cir. 2008) (comparing the factual allegations required to show a plausible personal injury claim versus a plausible constitutional violation).

Ordinarily, a motion to dismiss is decided on the pleadings alone. But "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (citation and internal quotation marks omitted).

**2.** A party may also move to dismiss for lack of jurisdiction under Fed. R. Civ. P. 12(b)(1). There are, generally speaking, two ways to

challenge subject-matter jurisdiction, one being facial and the other being factual. *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). A facial challenge accepts the facts in the complaint as true but argues they fail to state a basis for jurisdiction, while a factual attack contests the validity of jurisdictional facts. *Id.* Either way, "[t]he objection that a federal court lacks subject-matter jurisdiction … may be raised … at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506 (2006) (citing Fed. R. Civ. P. 12(b)(1) and 12(h)(3)). An objection to a plaintiff's standing is an objection that a federal court lacks subject-matter jurisdiction. *See Baker v. USD 229 Blue Valley*, 979 F.3d 866, 868 (10th Cir. 2020). Jurisdictional questions may be entwined with the merits of a case. If they are, then a court must convert a putative Rule 12(b)(1) motion into a Rule 12(b)(6) motion or a motion for summary judgment. *Kerr v. Polis*, 20 F.4th 686, 700 (10th Cir. 2021).

**3.** A preliminary injunction is an extraordinary remedy, with "the limited purpose…to preserve the relative positions of the parties until a trial on the merits can be held." *Schrier v. Univ. of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (citation and quotation marks omitted). Under Rule 65 of the Federal Rules of Civil Procedure, the party seeking a preliminary injunction must show four things: that "they are substantially likely to succeed on the merits of their claims," "they will suffer irreparable harm if the injunction is denied," "their threatened injury without the injunction outweighs any harm to the party opposing the injunction," and "the injunction, if issued, is not adverse to the public interest." *Harmon v. City of Norman*, 981 F.3d 1141, 1146 (10th Cir. 2020) (citing *Benisek v. Lamone*, 138 S. Ct. 1942, 1943 (2018)).

A preliminary injunction is never awarded as of right. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Thus even a standard preliminary injunction—one that simply preserves the position of the parties pending trial—is extraordinary. *Id.* Those seeking to mandate specific action rather than prohibit it, change the status quo, or grant all the relief a victorious movant could obtain at trial are even more disfavored. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). Movants seeking a disfavored injunction must make a strong showing of likely success on the merits and a balance of harms that tilts in their favor. *Id.*; *see also O Centro Espirita Beneficiente Uniao Do Vegetal v. Ashcroft*, 389 F.3d 973, 975 (10th Cir. 2004) (en banc) (per curiam).

**B**

Plaintiffs are Terri Baker, who sues as next friend of her son, S.B.; CarrieAnn Baumgarten; and a pair of Kansas homeschools, Baumgarten Academy and Heritage House. Doc. 13 at ¶¶ 42–46.[1] All four plaintiffs challenge aspects of Kansas's statutory and regulatory framework for special education services, claiming they are inconsistent with the First and Fourteenth Amendments. There are two defendants. Defendant Randall Watson is the Kansas Commissioner of Education. *Id.* at ¶ 32. Defendant Mark Schmidt is Assistant Superintendent of Special Education for Blue Valley School District. *Id.* at ¶ 33.

**1.** Kansas receives federal funding for education, as relevant here, pursuant to the Individuals with Disabilities Education Act (IDEA). Doc. 32 at 2–5; 20 U.S.C. § 1400, *et seq.* That funding comes with certain obligations. Doc. 32 at 2–5. To qualify for IDEA funding, states must, among other things, give children with disabilities a free and appropriate public education. 20 U.S.C. § 1412(a)(1)(A). So school personnel work with parents to develop individualized education programs for students with special needs.[2] *Honig v. Doe*, 484 U.S. 305, 311 (1988). These IEPs set out a child's present educational performance, establish goals, and describe the "specially designed instruction and services," including educational accommodations, necessary to meet those identified goals. *Id.*; *see also M.H. v. New York City Dep't of Educ.*, 685 F.3d 217, 224 (2d Cir. 2012) (describing IEPs in detail).

Kansas enforces its IDEA obligations through state statutes and regulations. *See* Kan. Stat. Ann. § 72-3403 *et seq.*; K.A.R. 91-40-48. Under Kansas law, IEPs follow a child wherever he or she is educated. The parent of a child with an IEP must "require such child to attend school to receive the special education and related services which are indicated on the child's IEP or … provide for such services privately." Kan. Stat. Ann. § 72-3421. And "every school district shall provide special education services" to in-district children at private, nonprofit elementary or secondary schools upon request of a parent or guardian. Kan. Stat. Ann. § 72-3462.

---

[1] All document citations are to the document and page number assigned in the CM/ECF system.

[2] In Kansas, "exceptional children." Kan. Stat. Ann. § 72-3404(g).

Parents of Kansas children with IEPs must ensure that someone provides their child's IEP services. *See* Kan. Stat. Ann. § 72-3421. They can comply with this mandate in several ways. A parent can provide services privately, at their own expense. *Id.* They can send their child to a public school and accept the public school's services. *Id.* Or they can choose a private school—in which case the public school district will help provide the IEP. Kan. Stat. Ann. § 72-3462.

This assistance can take several forms. A district may send a state employee to the private school, reimburse the private school for services rendered by a private employee, or bring the child to the public school to receive services. Kan. Stat. Ann. § 72-3462; *see also* K.A.R. 91-40-48(b). Local school districts administer IEPs. Kan. Stat. Ann. § 72-3429. So a student's public school district helps decide which services to provide and how to provide them, even when the student is educated privately. *Id.*

Kansas controls the ideological nature of its IEP services. State law provides that "[n]o special education services shall be provided in connection with religious courses, devotional exercises, religious training, or any other religious activity." Kan. Stat. Ann. § 72-3463. A related regulation, K.A.R. 91-40-48(c)(2), requires that special education services "provided to exceptional children enrolled in private schools [be] provided in a secular and nonideological manner."

**2.** S.B. has an IEP from Blue Valley School District, and Baumgarten's children have IEPs from Olathe School District. Doc. 13 at ¶¶ 43, 45. Although their IEPs are from Kansas public school districts, S.B. is homeschooled at Heritage House and Baumgarten's children are homeschooled at Baumgarten Academy. *Id.* at ¶ 45; Doc. 24 at 7–8.

In theory, S.B. and Baumgarten's children are eligible for state-funded services to implement their IEPs even though they attend homeschools. Kan. Stat. Ann. § 72-3462. But while possible in theory, Plaintiffs contend it is practically impossible for them to access state-funded special education services because Heritage House and Baumgarten Academy use a religious curriculum. Doc. 13 at 9–10.

Baker raised similar issues in a special education due process complaint filed with the Kansas Office of Administrative Hearings. Doc. 13 at ¶ 159. Her complaint alleged "that S.B. was improperly denied FAPE because Blue Valley unilaterally, and without prior notice or

opportunity to be heard, repeatedly removed S.B. from enrollment and now refuses to allow [him] to be enrolled even though [he] has an I.E.P. generated by Blue Valley that has not terminated." *Id.* at ¶ 169. A hearing officer dismissed Baker's complaint, *id.* at ¶ 162, after finding that the complaint was impermissibly vague. Doc. 66-5 at 2 (stating that the decision "does not rule on any issue other than the sufficiency"). Baker appealed the hearing officer's decision to an administrative law judge, but the ALJ affirmed the hearing officer's decision. Doc. 66-7 at 4 (referencing a parent's obligation to file an adequate complaint). At both stages of the administrative process, Kansas officials decided only procedural questions about the sufficiency of Baker's complaint. The ALJ specifically noted Baker's attempt to raise constitutional questions in the administrative process and refused to rule on those issues. *Id.*

**3.** Plaintiffs sued to prevent Defendants from enforcing the ideological restrictions contained in Section 72-3463 and K.A.R. 91-40-48 *et seq.* Doc. 1. They also amended their complaint to request reversal of the state-level administrative decision. Doc. 13 at ¶ 189.

The complaint, as amended, contains seven counts. Speaking broadly, Plaintiffs allege that the Kansas rules contravene a variety of First Amendment and related constitutional concepts. Count I alleges that Defendants violated the Free Exercise Clause of the First Amendment by excluding Plaintiffs from "[o]therwise [a]vailable [g]overnment [b]enefits." Doc. 13 at 26. Count II alleges a Free Exercise Clause violation based on "[c]ategorical [e]xemptions," meaning that Defendants treat secular schools more favorably than religious ones. *Id.* at ¶ 114. Count III alleges a violation of the Free Speech Clause, arguing that Kansas law both "mute[s] speech" and "compels a particular kind of speech odious to the plaintiffs"—that is, forbids religious speech and requires secular speech. *Id.* at ¶ 120. Count IV alleges a violation of the Equal Protection Clause of the Fourteenth Amendment, because "[t]he religious activities / use prohibitions of Kansas are not neutral and generally applicable." *Id.* at ¶ 127. Count V returns to the Free Exercise Clause and argues that Defendants impose unconstitutional conditions on religious exercise. *Id.* at 33. These conditions are, in Plaintiffs' view, a consequence of Kansas's alleged prohibition on the religious (but not secular) use of public special education benefits. *See id.*; Kan. Stat. Ann. § 72-3463. Count VI is another Free Exercise Clause claim, asserting that Defendants interfere with parents' ability to control the religious education of their children. *See* Doc. 13 at ¶

6

140. Finally, Count VII asks that a decision issued pursuant to a state-level administrative process be reversed. *Id.* at 35.

After Plaintiffs amended their complaint to add Count VII, Watson moved to dismiss. Doc. 23. He argues that he has Eleventh Amendment immunity, that Plaintiffs failed to explain how he violated their rights, and that Plaintiffs lack standing, among other things. Doc. 24. Schmidt requests judgment on the administrative record with respect to Count VII, the appeal arising from Baker's state-level administrative decision. Doc. 66 at 1. Schmidt and Plaintiffs apparently agree that Count VII can be decided based on the existing record. *See* Doc. 66 at 5; Doc. 78 at 1.

Plaintiffs also seek a preliminary injunction. Doc. 21. That request rests on their First Amendment claims. *Id.* at 1–2. As a result of Defendants' alleged First Amendment violations, Plaintiffs say, Defendants should preliminarily be enjoined from enforcing K.S.A. § 72-3463 and K.A.R 91-40-48(b), (c), and (e). *Id.* at 15. Both Watson and Schmidt oppose that motion. Doc. 31; Doc. 32.

## II

Five motions are pending. They are addressed in the following order. First, Plaintiffs' motion to supplement, Doc. 104, is granted. Then Watson's motion to dismiss the supplemented complaint, Doc. 23, is granted and Plaintiffs' motion for summary judgment against him, Doc. 106, is denied as moot. Next, Plaintiffs' motion for a preliminary injunction, Doc. 21, is denied because they are not likely to succeed on the merits of their claims. Finally, Schmidt requests judgment on the administrative record as to Plaintiffs' Count VII, Doc. 65, and that motion is granted.

## A

Plaintiffs moved to supplement their amended complaint. Doc. 104. That motion was filed after requesting a preliminary injunction, after Watson moved to dismiss, and after Schmidt moved for judgment on the administrative record. The amended complaint discusses a dispute over S.B.'s enrollment in a Blue Valley school. *See* Doc. 13 at ¶¶ 6–8. Plaintiffs want to supplement that portion of the complaint with "facts about … Blue Valley's refusal to enroll S.B. in the 2023-2024 and 2024-2025 school years." Doc. 104 at 1. In effect, their supplement would expand the temporal scope of their claim against Schmidt.

Watson does not oppose the supplement, so long as he is not required to re-file his pending motion to dismiss. *See* Doc. 105 (responding to Doc. 104 and referencing Doc. 23). And Schmidt has not affirmatively indicated that he opposes the supplement.

Supplements like the one proposed by Plaintiffs are governed by Federal Rule of Civil Procedure 15(d). That rule enables a court "on just terms" to "permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A court may do so even if "the original pleading is defective in stating a claim or defense." *Id.*

Rule 15(d) supplements typically serve judicial economy, because they avoid less efficient means of consolidating claims. For example, a party might instead "institute another action and move for consolidation under Rule 42(a) in order to litigate both claims in the same suit." 6A Wright & Miller, *Federal Practice and Procedure* § 1506 (3rd ed. 1998); *see also Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1187 (10th Cir. 2015). These maneuvers waste time, encouraging the use of Rule 15(d) to promote a just, speedy, and inexpensive determination of the merits. So courts often grant such requests, considering factors like "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). And since courts must permit supplements only "on just terms," courts may avoid requiring parties to re-file existing motions. Fed. R. Civ. P. 15(d); *TIG Glob., LLC v. PC Specialists, Inc.*, No. 10-CV-00307, 2011 WL 5244409, at *3 (D. Colo. Nov. 3, 2011).

Plaintiffs' motion to supplement is granted. The contents of the supplement are considered. This does not render moot any of the defendants' pending motions. *See* Fed. R. Civ. P. 15(d).

**B**

Watson seeks dismissal of all defendants' claims based on standing.[3] Doc. 23. He is correct: Baumgarten, Heritage House, and Baumgarten Academy fail to allege an injury-in-fact and Baker, even accepting that she properly alleges an injury-in-fact, cannot connect her alleged injuries to Watson. As a result, Watson's motion is granted.

**1**

Plaintiffs must establish that they have standing to assert a claim. *See Sierra Club v. United States Env't Prot. Agency*, 964 F.3d 882, 888 (10th Cir. 2020); *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. ----, No. 23-235, 2024 WL 2964140, at *6 (U.S. June 13, 2024). This requirement flows from Article III of the Constitution, which "confines the federal judicial power to the resolution of 'Cases' and 'Controversies.'" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). A case or controversy—that is, standing—exists when a plaintiff has a "personal stake in the case." *Id.* (internal quotation marks omitted). This rule, as the Supreme Court has repeatedly put it, "requires a plaintiff to first answer a basic question: 'What's it to you?'" *All. For Hippocratic Med.*, 2024 WL 2964140, at *5 (citation and internal quotation marks omitted); *see also TransUnion LLC*, 594 U.S. at 423.

Plaintiffs answer that question, and thus carry their burden to establish standing, when they prove that they suffered an injury-in-fact which is fairly traceable to the defendant's actions and likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). Not all alleged injuries suffice as "injury-in-fact." An injury-in-fact must be "concrete," "particularized," and "actual or imminent." *TransUnion LLC*, 594 U.S. at 423; *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (clarifying that these requirements are independent). The other two requirements, causation and redressability, often blend into a single inquiry. *See All. For Hippocratic Med.*, 2024 WL 2964140, at *6 (citing *Sprint Communications Co. v.*

---

[3] Plaintiffs contend Watson's motion to dismiss, Doc. 23, is untimely, Doc. 25 at 1. It is not. Jurisdictional deficiencies can be raised at any time. Fed. R. Civ. P. 12(h)(3); *Mires v. United States*, 466 F.3d 1208, 1211 (10th Cir. 2006) ("[A] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action—even on appeal.") (citation and internal quotation marks omitted).

*APCC Services, Inc.*, 554 U.S. 269, 288 (2008)). They do so because "[i]f a defendant's action causes an injury, enjoining the action or awarding damages for the action will typically redress that injury." *Id.* Finally, even if a plaintiff has standing to assert one claim, he or she must satisfy the standing inquiry as to each claim separately. *Shields v. Pro. Bureau of Collections of Maryland, Inc.*, 55 F.4th 823, 827 (10th Cir. 2022) (explaining that courts in the Tenth Circuit determine standing on a claim-by-claim basis).

**2**

The homeschool plaintiffs—Heritage House and Baumgarten Academy—lack standing to sue either defendant. Students, not their schools, are entitled to special education benefits. *See* Kan. Stat. Ann. § 72-3411 (describing school boards' powers with respect to students); Kan. Stat. Ann. § 72-3411 (explaining how a public school can satisfy its duty to *provide* special education services); *cf. Winkelman ex rel. Winkelman v. Parma City Sch. Dist.*, 550 U.S. 516, 535 (2007) (concluding that because "[p]arents enjoy rights under IDEA" they "they are … entitled to prosecute IDEA claims on their own behalf"); *Fowler v. Unified Sch. Dist. No. 259, Sedgwick Cnty.*, 128 F.3d 1431, 1434 (10th Cir. 1997) (contemplating a district's obligation under IDEA "to pay for the full cost of *the student's education*" and "to make special education services available *to … student*[*s*]") (emphasis added). If schools have a right to benefits under the Kansas scheme independent of students' rights, then Plaintiffs have not identified the source of that right. *See* Doc. 1 at ¶ 23. So the homeschools cannot argue that they have been denied benefits.

And to the extent that the homeschools claim they cannot "provide a general education curriculum while having special needs and related services provided in connection with their curriculum," Doc. 13 at ¶ 46, they assert a speculative injury. They do not allege that any of the challenged provisions will be, or have been, enforced against them by these defendants. *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014). Nor do they establish an injury based on unconstitutional conditions. Even if the homeschools scrubbed their curriculum of all religious references, they would not necessarily receive special education services. IEPs are provided to students, not their schools, so any benefit follows the student rather than the school. *See* Kan. Stat. Ann. § 72-3421 (referring to a "child's IEP"); Kan. Stat. Ann. § 72-3429 (noting that, with exceptions "each agency shall have an individualized education program in effect for each exceptional child"). Thus,

the homeschools' theory of injury-in-fact depends on choices made by students (who may enroll), public schools (who decide whether and how to provide benefits), and parents (who also decide whether to provide benefits). This speculative chain of possibilities does not reveal a concrete injury. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013).

Similar issues would deny the homeschools standing even if one assumes that they suffer an injury-in-fact. The homeschools' theory of injury runs through their students' private decisions. *See* Doc. 13 at ¶ 46. Specifically, the homeschools imply that they cannot open their doors to students with disabilities because those students could not "hav[e] special needs and related services provided in connection with their [religious] curriculum." *Id.* If students with disabilities attend the homeschools despite that restriction, then the schools are not injured; the challenged restriction has had no effect. And if students with disabilities choose not to attend the homeschools, Plaintiffs must do more to link those choices with Watson's abstract authority over the Kansas Department of Education. *See Clapper*, 568 U.S. at 415. In short, the homeschool plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416. When they do so, "[a]ny ongoing injuries that [they] are suffering are not fairly traceable" to Watson. *Id.*; *see also N. Laramie Range All. v. FERC*, 733 F.3d 1030, 1038 (10th Cir. 2013) (concluding that a plaintiff did not satisfy its burden on traceability when it "assumed a connection" between several conditional events).

### 3

Baumgarten also lacks standing to sue either defendant. Her children have IEPs from Olathe School District and attend Baumgarten Academy. Doc. 13 at ¶ 45. Neither Baumgarten nor her children are alleged to have any connection to any Blue Valley school. *Id.* Despite that, all of Plaintiffs' specific allegations, to the extent that they make such allegations, refer only to Blue Valley. *See generally* Doc. 13.

Thus, Plaintiffs do not allege (or appear capable of alleging) that either defendant denied Baumgarten any services to which she was entitled. *Cf. Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606 (2013) (recognizing that someone who is actually denied a government benefit suffers a constitutionally cognizable injury). Schmidt is a Blue Valley employee who has nothing to do with Olathe School District.

Doc. 13 at ¶ 33. And Plaintiffs do not explain what Watson did in the context of Baumgarten's children or Olathe School District. Nor do Plaintiffs allege that any statute has been (or could be) enforced against Baumgarten. *Driehaus*, 573 U.S. at 158–59. So her only injury is one shared by many people: A statute exists, and she believes that it is unconstitutional. Such allegations do not state an injury-in-fact. *Carney v. Adams*, 592 U.S. 53, 58 (2020) ("[A] grievance that amounts to nothing more than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'"); *Am. Humanist Ass'n, Inc. v. Douglas Cnty. Sch. Dist. RE-1*, 859 F.3d 1243, 1247 (10th Cir. 2017).

### 4

Baker lacks standing to sue Watson. She alleges that she was denied a generally available public benefit—public special-education services for her son—because she wanted to use that benefit in a religious context. See Doc. 13 at ¶¶ 16–17; 97–117; 126–131. She lacks standing because although Plaintiffs adequately describe an injury-in-fact, that injury is not traceable to Watson.

An injury-in-fact is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Awad v. Ziriax*, 670 F.3d 1111, 1120 (10th Cir. 2012). A plaintiff who seeks prospective relief must demonstrate a "real or immediate threat that [they] will be wronged again." *See City of Los Angeles v. Lyons*, 461 U.S. 95, 101–02, 111 (1983). And the threat of a constitutional violation, without more, is insufficient. Plaintiffs must also "identify a personal injury suffered by them as a consequence of the alleged constitutional error." *Awad*, 670 F.3d at 1122 (citation omitted).

Baker identifies a personal injury. She claims that she was denied state-provided special education services because of her religious beliefs. Doc. 13 at ¶¶ 16–17. Her son, S.B., has an IEP and may therefore be eligible for such services, even though he attends a private school. Doc. 13 at ¶¶ 42–45; *see* Kan. Stat. Ann. § 72-3462 (explaining that school districts will provide services "upon request of a parent or guardian of any [eligible] child"). But Blue Valley refused to do so: it "has denied S.B. special needs and related services because it has conditioned those services upon unconstitutional conditions." Doc. 13 at ¶ 16 (emphasis added). By "unconstitutional conditions," Baker means K.S.A. § 72-3463, which limits the religious nature of special education

services. *See id.* at ¶¶ 103–04. In short, then, Baker alleges that Blue Valley enforced Section 72-3463 to deny S.B. a benefit. This is an injury-in-fact, since "the impermissible denial of a governmental benefit is a constitutionally cognizable injury." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 606–07 (2013).

Yet injury-in-fact does not itself create standing. *Does 1-11 v. Bd. of Regents of Univ. of Colorado*, 100 F.4th 1251, 1262 (10th Cir. 2024). An injury must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 759 (10th Cir. 2023) (citation omitted); *see also United States v. Windsor*, 570 U.S. 744, 757 (2013). And Baker cannot trace her injury to Watson.

She alleges that S.B. was injured when Blue Valley denied him special education benefits. Doc. 13 at ¶ 16. And she traces this injury to Watson by pointing only to Watson's abstract authority to supervise schools. For instance, she notes that "Watson's disjointed argument does not contend that [the Department] has no connections to the K.A.R. regulations, funding, or the interpretation of regulations and statues that schools (agencies) must follow." Doc. 25 at 3. In other words, Watson has something to do with local schools, so he can be held responsible for their actions. These allegations attempt to make Watson disprove traceability as part of the standing inquiry. But Watson bears no burden when it comes to standing; it is Baker who must demonstrate through factual allegations that her injury is traceable to Watson's acts or omissions. *See Awad*, 670 F.3d at 1120 (confirming that standing is a plaintiff's burden). She cannot simply conclude that because Watson has authority, he must have exercised that authority in her case and in a way that caused her injury. *Habecker v. Town of Estes Park*, 518 F.3d 1217, 1225 (10th Cir. 2008) ("If speculative inferences are necessary to connect a plaintiff's injury to the challenged action, [a plaintiff's traceability] burden has not been met.") (cleaned up).

Baker also argues that her injury is traceable to Watson because the Department "states it publishes a Handbook to provide guidance, resources and supports necessary for those professionals who work to improve results for exceptional children." Doc. 25 at 4 (internal quotation marks omitted). She then concludes that "[s]chools, including Blue Valley … must adhere to the [Department's] regulations as interpreted by [it] in its guidelines." *Id.* These sweeping connections are once again too attenuated to satisfy the traceability injury. That Watson

could exercise authority over Blue Valley does not mean that he has done so—nor, more importantly, that he has done so in this case and in a way that has to injured Baker. Since Baker cannot trace her injury to Watson, she lacks standing to sue him.[4]

*      *      *

None of the plaintiffs have standing to sue Watson. The home-school plaintiffs cannot demonstrate that they have suffered an injury in fact, or that any such injury would be traceable to Watson. *See* Section II.B.2, *supra*. Neither can Baumgarten. *See* Section II.B.3, *supra*. And although only Watson (and not Schmidt) moved to dismiss, Doc. 23, the homeschools' and Baumgarten's standing problems are broad and obvious. Those plaintiffs allege no adequate injury in fact and could not trace any such injury to either of Defendants. As a result, their claims against both defendants are dismissed. *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (discussing a court's obligation to raise standing issues sua sponte). The same is not true of Baker. She pled an adequate injury in fact, just not one that she could trace to Watson. *See* Section II.B.4, *supra*. That means she fails to satisfy the traceability inquiry, and thus that Watson's motion to dismiss, Doc. 23, must be granted. But because Baker does not run into as obvious a standing issue as the other Plaintiffs, the question of her standing to sue Schmidt is not raised sua sponte.

**C**

The only remaining claims in this suit are Baker's claims against Schmidt. Relying on First Amendment principles,[5] she moves for a preliminary injunction that would enjoin Schmidt from continuing to

---

[4] Plaintiffs filed a motion for summary judgment against Watson, Doc. 106, while the motion to dismiss was pending. That motion is denied as moot because Plaintiffs fail to state a claim against Watson. *Ruiz v. Lavery*, 853 F. App'x 314, 316 n.3 (10th Cir. 2021) (dismissing a motion for summary judgment as moot after finding that the plaintiff failed to state a claim for relief).

[5] Count IV in Baker's complaint alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. Doc. 13 at ¶ 32. She does not mention it in her motion for a preliminary injunction. *See* Doc. 21. Accordingly, the question whether it might justify an injunction is not considered.

14

enforce K.S.A. § 72-3463 and K.A.R 91-40-48(b), (c), and (e).[6] Doc. 21 at 15. That request is denied. Of the six constitutional claims she makes, she lacks standing to pursue two of them, Counts III and VI. And she is unlikely to succeed on the merits of the remaining constitutional claims, Counts I, II, and V.

**1**

Baker requests a preliminary injunction barring Schmidt from enforcing K.S.A. § 72-3463 and K.A.R. 91-40-48(b), (c), and (e). Schmidt argues that Baker lacks standing to seek that injunction. Doc. 31 at 3; Doc. 32 at 14. Baker has standing to seek an injunction from Schmidt on Counts I, II, and V, but not Counts III and VI.

**a.** Start with Counts I, II, and V. These claims overlap significantly and allege that Baker was denied a benefit on constitutionally suspect grounds. Specifically, Baker says, Schmidt applied Kansas's law and concluded that S.B. was ineligible for special education benefits. Thus, Blue Valley allegedly denied Baker and S.B. special education services. Doc. 13 at ¶ 16. At this stage, that allegation is sufficient to state an injury-in-fact. *See* Section II.B.4, *supra* (analyzing this argument for injury-in-fact as asserted against Watson); *Petrella v. Brownback*, 697 F.3d 1285, 1292 (10th Cir. 2012).

Schmidt contends that Baker's "bald, perfunctory allegation [does not] satisfy Article III standing" because it "is merely a statement that Blue Valley has affirmed it complies with applicable law." Doc. 32 at 15. But Baker alleges that she already sought a benefit, which was withheld because of Section 72-3463 and related provisions. Doc. 13 at ¶ 16. While a mere expression of a defendant's ongoing willingness to comply with the law might not create a concrete injury, actual enforcement—which Baker alleges—does. *See Summers v. Earth Island Inst.*, 555

---

[6] Injunctions that would mandate specific action rather than prohibit it, change the status quo, or grant all the relief a victorious movant could obtain at trial are disfavored. *Free the Nipple-Fort Collins v. City of Fort Collins, Colo.*, 916 F.3d 792, 797 (10th Cir. 2019). Movants seeking a disfavored injunction must make a strong showing of likely success on the merits and a balance of harms that tilts in their favor. *Id.* It is not necessary to decide which standard applies to Baker's request, because she cannot succeed even under the ordinary standard. *See id.* at 797–98 (declining to consider whether the ordinary or heightened standard would apply).

15

U.S. 488, 496 (2009) (noting that concrete plans can establish an imminent injury); *cf. Baker v. USD 229 Blue Valley*, 979 F.3d 866, 875 (10th Cir. 2020) (concluding that a plaintiff's "'some day' intention" did not amount to injury-in-fact).

The other standing requirements are satisfied too. Baker can trace her alleged injury to Schmidt. She claims that he "has communicated to Terri Baker that 'Blue Valley will not make FAPE available to [S.B.] during his religious training and religious activities irrespective of whether [S.B.] attends public, homeschooling, or private schooling.'" Doc. 13 at ¶ 50 (alterations in original). In other words, she claims that he imposed—or at least ratified—her alleged injury. This role in causing her injury means that an injunction confining him to constitutional criteria, rather than Kansas's allegedly unlawful criteria, would redress Baker's injury. *See Consumer Data Indus. Ass'n v. King*, 678 F.3d 898, 903 (10th Cir. 2012) ("So long as the plaintiff faces a credible threat of enforcement, redressability is generally not an obstacle.").

Schmidt claims that he is not actually bound to enforce the challenged laws. Doc. 32 at 15. But whether that is his role or not, Baker pled that he has in fact enforced the challenged provisions. Doc. 13 at ¶¶ 16, 50. At this stage, that is enough. *See Petrella*, 697 F.3d at 1292.

**b.** Although Baker has standing to seek a preliminary injunction as to Counts I, II, and V, she alleges no injury-in-fact that would permit her to seek one as to Counts III and VI. To the extent that her request depends on Counts III and VI, it is denied.[7]

Baker lacks standing to assert Count III, which alleges a series of Free Speech Clause violations. She points to K.A.R. 91-40-48(c)(2), which requires that special education services "provided to exceptional children enrolled in private schools [be] provided in a secular and

---

[7] A court could stop there, except "standing is a question of justiciability that implicates [a] court's jurisdiction." *United States v. Ramos*, 695 F.3d 1035, 1046 (10th Cir. 2012) (quotation marks and internal alterations omitted). So "where the record reveals a colorable standing issue," a court must "undertake an independent examination (sua sponte if necessary) of that issue." *Id.*; *Santa Fe All. for Pub. Health & Safety v. City of Santa Fe*, 993 F.3d 802, 813 (10th Cir. 2021) (noting that courts in the Tenth Circuit "address standing on a claim-by-claim basis"). Baker lacks standing to assert Counts III and VI, meaning that jurisdiction over those claims is lacking and they must be dismissed. *Ramos*, 933 F.3d at 813.

nonideological manner." In Baker's view, this regulation "mute[s] speech" and "compels a particular kind of speech odious to the plaintiffs." Doc. 13 at ¶ 120.

Set aside the question whether Kansas forces parents whose children receive special education benefits to speak. Even if that were true, Baker has not been injured. She alleges no threat of enforcement under the challenged regulation—nor could she. She does not provide the services that could be subject to Section 72-3463. Doc. 13 at ¶ 16.

Of course, even "the threatened enforcement of a law" can create an Article III injury. *Driehaus*, 573 U.S. at 158–59. So perhaps Baker means that she is deterred by her fear of potential enforcement. But even then, her allegations do not establish that she has standing. Baker, like any plaintiff whose injury stems from the threat of enforcement, must also allege "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." *Id.* Baker does not adequately allege this with respect to Count III. Doc. 13 at ¶ 16.

Baker also lacks standing to assert Count VI, which alleges that "[b]y prohibiting the use of otherwise generally available public funding for special education and related services … Defendants have interfered with the plaintiffs' right to direct the religious upbringing of their children." Doc. 13 at ¶ 142. Nothing in Kansas's framework for special education services regulates Baker's ability to raise her children. As explained, the framework governs special education services and the people who provide them. And even if Kansas's framework did operate as Baker suggests, she has not alleged that it will be enforced against her. *See Driehaus*, 573 U.S. at 158–59. Accordingly, she lacks standing to assert this claim.

## 2

Baker contends that she is entitled to an injunction because Kansas's "scheme violate[s] [her] First Amendment rights." Doc. 21 at 2–3. That request is denied because she has not shown that she is likely to succeed on the merits of her remaining First Amendment claims.

First, Baker makes several Free Exercise Clause arguments. Doc. 21 at 2–3; *see also* Doc. 13 at ¶¶ 97–117, 132–138 (raising similar issues). None of them demonstrate that she is entitled to preliminary injunctive

relief because although Baker discusses general Free Exercise princi-
ples, she does so at a superficial level and, importantly, does not explain
how the Kansas statutes or regulations violate those principles such
that they compel relief in her particular case. It is possible that there is
a viable claim lurking within this dispute, but its presence has not been
shown.

For example, she states that Kansas's scheme "make[s] the receipt
of free special education benefits – as well as the delivery of those ser-
vices at the parent's own expense – conditional on the abandonment
of religious identity." Doc. 21 at 6. It might, and may therefore impli-
cate the First Amendment. *Carson v. Makin*, 142 S. Ct. 1987, 2000
(2022) (noting that a state cannot "exclude[ ] religious observers from
otherwise available public benefits"). But Baker does not elaborate or
explain how it does so. *Schrier*, 427 F.3d at 1266 (affirming a district
court's decision to deny a preliminary injunction because the plaintiff
"failed to meet his burden of demonstrating a substantial likelihood of
success on his First Amendment claims").

Likewise, Baker asserts that the challenged statute and regulations
"effectively disqualify[] both parents and the[] homeschools solely be-
cause they are religious." Doc. 21 at 6 (quotation marks and citation
omitted). As before, that might be true—and if it is, the challenged
statute and regulations would present a Free Exercise issue to be ad-
dressed. *Carson*, 142 S. Ct. at 2000. But Baker does not explain how
Kansas law violates the First Amendment such that a preliminary in-
junction should issue. *Schrier*, 427 F.3d at 1266. Her arguments in sup-
port of her claims are sparse and do not engage with the text of the
challenged provisions in a way that establishes a likelihood of success
on the merits.

Two such provisions are at issue. K.S.A. § 72-3463 states that "[n]o
special education services shall be provided in connection with reli-
gious courses, devotional exercises, religious training, or any other re-
ligious activity." And K.A.R. 91-40-48(c)(2) instructs that "[e]ach
agency shall ensure that special education and related services provided
to exceptional children enrolled in private schools are provided in a
secular and nonideological manner. Baker says that K.A.R. 91-40-48
and Section 72-3463 together mean that no IEP services whatsoever
can be provided in any religious setting—such as Baker's home-
school—and that this violates the First Amendment. In other words,
she claims that she cannot access a benefit that would be available if
she were not religious. Defendants respond that K.A.R. 91-40-48(c)(2)

means the same unobjectionable thing as Section 72-3463: State employees cannot themselves provide religious instruction.

Baker's view is not clearly correct. Kansas is generally free to tell its employees how to perform their jobs. *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. ---, 142 S. Ct. 2407, 2423 (2022) (noting that "government employees [are] paid in part to speak on the government's behalf and convey its intended messages"); *see also Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). So the regulation, at least on its face, does not appear inconsistent with the First Amendment. Baker merely asserts without explaining that the regulation is facially inconsistent with the First Amendment.

Any such explanation would have to show that Section 72-3463 likely violates the nondiscrimination principle described in *Carson*. 142 S. Ct. 1987. Baker cannot do so because, among other things, that section has been interpreted in such a way as to reject many of Baker's discrimination arguments. *Baker v. Blue Valley Sch. Bd.*, 543 P.3d 1179 (Kan. Ct. App. 2024) (table). "[Section 72-3463] only prohibits *public schools* from providing religiously oriented special education services—not parents or private schools." *Baker*, 543 P.3d 1179 (emphasis in original). The Kansas Court of Appeals decision went further, explaining that "[i]f a parent pursues the private option, they may combine special education services with religious practice." *Id.* Of course, the *Baker* decision is not controlling, so a federal court must still "attempt to predict what the state's highest court would do." *United States v. DeGasso*, 369 F.3d 1139, 1145 (10th Cir. 2004). But that prediction is informed by the *Baker* decision. After all, "[i]t is axiomatic that state courts are the final arbiters of state law." *Id.* And neither *Baker* nor the challenged sections suggest that Baker's interpretations of state law are so clearly correct that preliminary relief is warranted.

Other parts of Baker's argument are opaque, and do not make her likely to succeed on the merits. For example, she intermittently argues that "[n]othing in the Disabilities Education Act ("IDEA") … require[s] that special education services be provided in a 'secular and nonideological manner.'" Doc. 21 at 1 (citing K.A.R. 91-40-48(c)(2)). But IDEA states that "[s]pecial education and related services provided to parentally placed private school children with disabilities, including materials and equipment, shall be secular, neutral, and nonideological," 20 U.S.C. 1412(a)(10)(A)(vi)(II). Plainly, then, something in IDEA "require[s] that special education services be provided in a secular and nonideological manner." Doc. 21 at 1. While Baker stresses that she

does not challenge IDEA's version of this requirement, she challenges Kansas's substantially similar version.[8] Doc. 21 at 1; Doc. 25 at 10; Doc. 33 at 5. A synthesis of this apparent contradiction is critical to her success on the merits but does not appear in her pleadings, at least not in a discernable way.[9] *See* Doc. 33 at 4 (discussing IDEA in the context of Section 72-3463).

### D

Count VII in Baker's complaint is an appeal. *See* 20 U.S.C. § 1415(i)(2)(A) (permitting a party aggrieved at the state level to sue in federal court); Kan. Stat. Ann. § 72-3418(c) (same); *Patrick G. by & through Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1191 (10th Cir. 2022) (explaining how IDEA permits an appeal to federal court); *Beer v. USD 512 Shawnee Mission*, No. 21-2365, 2023 WL 2562416, at *33 (D. Kan. Mar. 17, 2023) (noting that the "appeal and review process allows parties to appeal [a] decision to a review officer and, then, to appeal that review officer's decision to the court"). Baker's appeal arises from a special education due process complaint that Baker previously filed with the Kansas Office of Administrative Hearings. Doc. 13 at ¶ 159. A hearing officer dismissed Baker's complaint. *Id.* at ¶ 162. She requests that his decision be reversed. *Id.* at ¶ 189. Count VII is now at issue because Schmidt moves for judgment on the administrative record. Doc. 65; *see also L.B. ex rel. K.B. v. Nebo Sch. Dist.*, 379 F.3d 966, 974 (10th Cir. 2004) (reviewing the decision of a district court that granted "a judgment on the administrative agency's record" under IDEA and noting that summary dispositions under IDEA are often best described as judgments on the record). For the following reasons, his motion is granted, and the hearing officer's decision is affirmed.

---

[8] Neither this argument nor Baker's ancillary arguments related to federal law require notifying the United State Attorney General. *Contra* Doc. 32 at 2–3. The implied challenge is not enough. "The validity of a statute is not drawn in question every time rights claimed under such statute are controverted." *Marquez v. KBMS Hosp. Corp.*, 492 F. Supp. 3d 1058, 1066 (C.D. Cal. 2020) (citing *United States v. Lynch*, 137 U.S. 280, 285 (1890)). Rather, a plaintiff must deny the "constitutionality, or legality of such statute" and "the denial [must] form[] the subject of direct inquiry." *Id.* That is not the case here, so Baker need not alert the Attorney General.

[9] Baker makes several other arguments in support of her motion, Doc. 21 at 10–11, but she lacks standing to assert them, *see* Section II.C.1, *supra*.

**1.** Before addressing the substance of the appeal and the parties' respective arguments, it is helpful to understand the context in which this dispute has arisen. To qualify for IDEA funding, states must give children with disabilities a free and appropriate public education. 20 U.S.C. § 1412(a)(1)(A). IDEA "relies on specific federal and state regulations for implementation" of this requirement. *D.T. by & through Yasiris T. v. Cherry Creek Sch. Dist. No. 5*, 55 F.4th 1268, 1273 (10th Cir. 2022). Disputes may arise between parents and schools about schools' efforts to provide a free appropriate public education. These disputes are subject to state-based administrative review. *See* 20 U.S.C. § 1415(f). That review includes, most formally, "an impartial due process hearing." *Patrick G. by & through Stephanie G. v. Harrison Sch. Dist. No. 2*, 40 F.4th 1186, 1191 (10th Cir. 2022) (citation omitted).

Some complainants never receive a hearing. If a complaint is inadequate, a hearing officer may reject it on its face. Most complaints do not fail this way, because both IDEA and Kansas law presume that complaints are adequate. Kan. Stat. Ann. § 72-3415(b)(2); 20 U.S.C. § 1415(c)(2)(A). Still, a defendant can overcome that presumption by "notif[ying] the hearing officer and the other party … that the receiving party believes the [complaint] does not meet the requirements" of Section 72-3415(a)(1). And if the complaint is inadequate, then the complainant "shall not be entitled to a due process hearing." *See* Kan. Stat. Ann. § 72-3415(a)(1).

After a person files a complaint—adequate or otherwise—the parties must meet "to discuss the due process complaint[] and the facts that form the basis of the … complaint." 34 C.F.R. 300.510(a)(2). The parties can waive this meeting, 34 C.F.R. 300.510(a)(3); K.S.A. 72-3416(a)(5), and did so here, Doc. 78-1.

A hearing officer may then render a decision under several of IDEA's subsections. *See* 20 U.S.C. § 1415(i)(1). An aggrieved party can appeal these decisions within Kansas's system. Kan. Stat. Ann. § 72-3418(b)(1). If they are still unsatisfied with that state appeals process, they can appeal again to a federal court. 20 U.S.C. § 1415(i)(2)(A); Kan. Stat. Ann. § 72-3418(c).

Federal courts review state administrative decisions under IDEA using a modified de novo standard. *Garcia v. Bd. of Educ. of Albuquerque Pub. Sch.*, 520 F.3d 1116, 1125 (10th Cir. 2008). Under this standard, a district court must receive the records of the administrative proceedings, hear additional evidence upon request, and base its decision on

the preponderance of evidence. 20 U.S.C. § 1415(i)(2)(C); *see also Cherry Creek*, 55 F.4th at 1273. Much of this evidence will have been reviewed by the agency below. *See Garcia*, 520 F.3d at 1125. And agency factfinding is presumed correct. *Id.*

**2.** Baker's case resists ordinary review because the merits of her dispute were not decided. Instead, both Baker's hearing officer and an ALJ found her complaint impermissibly vague—referencing "random unexplained emails," and "unrelated vague allegations"—and rejected it on that basis. Doc. 66-5 at 2 (stating that the decision "does not rule on any issue other than the sufficiency"); Doc. 66-7 at 4 (referencing a parent's obligation to file an adequate complaint); *see also* 20 U.S.C. § 1415(c)(2)(D) (setting forth IDEA's version of complaint sufficiency requirements). Their determinations do not support federal court jurisdiction because an aggrieved party can only appeal the results of a hearing, and a party with an insufficient complaint does not receive a hearing.

Jurisdiction under IDEA is limited. It allows parties to seek review in federal court only when they are aggrieved by decisions and findings under subsections (f), (k), (g), and (i). *See* 20 U.S.C. § 1415(i)(2)(A). Baker does not dispute any such decision or finding. Instead, she contests a determination made under Subsection (c), which governs insufficient complaints. *Id.* at § 1415(c)(2)(A), (D); *see also* Kan. Stat. Ann. § 72-3415(b)(3) (implementing this portion of IDEA).

A decision under Subsection (c) means that a claimant never receives a hearing, and thus never receives findings or a decision. Without findings or a decision, a claimant has nothing to appeal—and a court has nothing to review. *See A.F. ex rel Christine B. v. Espanola Pub. Sch.*, 801 F.3d 1245, 1246 (10th Cir. 2015) (explaining that a parent and student may bring a civil action in federal court if they are aggrieved by a hearing and their subsequent appeals). Courts in other jurisdictions to confront this issue have reached similar conclusions. *See, e.g., Knight v. Washington Sch. Dist.*, No. 09-CV-00566, 2010 WL 1909581, at *4 (E.D. Mo. May 10, 2010), *aff'd*, 416 F. App'x 594 (8th Cir. 2011); *Marlboro Twp. Bd. of Educ. v. H.L.*, No. 18-CV-12053, 2019 WL 1877394, at *3 (D.N.J. Apr. 26, 2019), *aff'd sub nom. Twp. of Marlboro Bd. of Educ. v. H.L.*, 793 F. App'x 101 (3d Cir. 2019) (noting that without a due process hearing, "the triggering event providing the Court jurisdiction to hear an appeal … has not occurred"); *Jackson Twp. Bd. of Educ. v. D.B. o/b/o Y.B.*, No. 23-CV-3568, 2023 WL 6690473, at *4 (D.N.J. Oct. 12, 2023); *G.R. ex rel. Russell v. Dallas Sch. Dist. No. 2*, No.

10-CV-232, 2010 WL 5232958, at *8 (D. Or. Dec. 15, 2010); *Fernandez v. Elk Grove Unified Sch. Dist.*, No. 19-CV-00082, 2020 WL 1532229, at *4 (E.D. Cal. Mar. 31, 2020); *H.T. v. Hopewell Valley Reg'l Bd. of Educ.*, No. 14-1308, 2015 WL 4915652, at *7 (D.N.J. Aug. 18, 2015); *Jackson Twp. Bd. of Educ. v. S.G. on behalf of A.G.*, No. CV 16-0336, 2017 WL 1065819, at *4 (D.N.J. Mar. 21, 2017); *I.K. o/b/o Z.S. v. Montclair Bd. of Educ.*, No. 16-CV-9152, 2018 WL 2441761, at *5 (D.N.J. May 31, 2018) (concluding that sufficiency decisions are not appealable, but noting that "the appealability of a sufficiency decision is an open question"); *but see M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1090 n.12 (9th Cir. 2012) (hinting, in dicta, that "[i]f the ALJ completely dismisses the matter, the dismissal is final and judicially reviewable"). Because Baker cannot bring her claim in federal court, Schmidt's motion for judgment on the administrative record as to Count VII, Doc. 65, is granted.

## III

For the foregoing reasons, Watson's Motion to Dismiss, Doc. 23, is GRANTED. Schmidt's Motion for Judgment on the Administrative Record on Count VII, Doc. 65, is GRANTED. Baker's Motion for a Preliminary Injunction, Doc. 21, is DENIED. Her Motion to Supplement, Doc. 104, is GRANTED. Her Motion for Summary Judgment, Doc. 106, is DENIED as moot.

It is so ordered.

Date: June 25, 2024                          _s/ Toby Crouse_____
                                             Toby Crouse
                                             United States District Judge