UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Terri Baker *et al*
                       Plaintiffs,

v.                                    Case No. 5:23-cv-04022-TC-TJJ

Randall Watson *et al*
                       Defendants

**PLAINTIFF TERRI BAKER'S REPLY TO MEMORANDUM IN SUPPORT OF PARTIAL SUMMARY JUDGMENT**

**BVLY IGNORES CARSON'S TWO FOLD ANALYSIS OF TARGETING RELIGION**

BVLY mangles both *Loffman* and *Carson* claiming it provides services to all locations – end of story.  ECF 126, p.27.  The *Loffman* target was still <u>religion</u> using the methodology of *status* (religious schools) while 72-3463 targets <u>religion</u> employing a different methodology of *use* (religious activities).  Both targeting methodologies are prohibited under *Carson*. *Carson's* double-barreled *status-use* analysis captures the discriminatory religious targeting of 72-3463.  Adopting BVLY's mindset is like saying one's insurance policy allows you to pick any hospital for treatment but it won't pay for any medical treatments while the doctor prays for diagnosis wisdom or divine help during the operation.  Or the insurance claims department saying you can take your car to any shop but it won't pay for the mechanical work because you might use it to drive to church.  BVLY still admits the pertinent part: that its IDEA services will not be provided if "part of religious activity" which is really all that matters to the Constitutional analysis.  The reason *Carson* and its forerunners have so tightly policed benefits exclusions is that such exclusions put a governmental "thumb on the scale" against religion, *Espinoza at* 514, incentivizing religious people and

1

organizations to abandon their religious exercise in order to "compete with secular" counterparts. *Trinity Lutheran* at 463. BVLY concedes the obvious: it still penalizes "religious activity" with the same scale-tipping thumb irrespective of location.

## ASSOCIATIONAL RIGHTS

BVLY says it knows better than Terri what actually burdens her religious convictions or her expressions. ECF 126, p.24, p.40. But a "state, or a court, may not constitutionally substitute its own judgment for that of the plaintiff on what would burden its expression." *Democratic Party of U.S. v. Wisconsin,* 450 U.S. 107, 123-24 (1981). Rather, the court must "give deference to [the] association's view of what would impair its expression." *Boy Scouts of Am. v. Dale,* 530 U.S. 640, 653 (2000). BVLY argues that the Plaintiff's expressive-association rights disappear in this public-benefit context. ECF 126, p.37. But the Supreme Court has repeatedly "reaffirmed … that 'the liberties of religion *and expression* may be infringed by the denial of or placing of conditions upon a benefit or privilege.'" *Loffman v. Cal. Dep't of Educ.,* 119 F.4th 1147, 1165 (9th Cir. 2024) (*emphasis added*).

## 72-3463 HAS CORRUPTED BVLY'S UNDERSTANDING AND DELIVERY OF SERVICES

Rather than taking it as a badge of honor, BVLY takes umbrage at the use of "godless" to describe it and its curriculum. Again, BVLY portends as the all-knowing Oracle to say it not only knows Terri's expressions better than she does but her religious beliefs as well when it says godless is a "term of derision rather than a statement of religious belief." ECF 126, p.40. Actually, it is a <u>statement of fact</u> as "secularism" means "rejection or exclusion of religion and religious considerations" –

*i.e.* godless. That is precisely what 72-3463 does and is designed to do. BVLY repeats its all-knowing-declaration of Terri's beliefs saying S.B. "does not need to use religious materials" for "reading skills." ECF 126, p.34. Who says? Besides imposing its secular humanistic philosophy upon Terri, it also robs Terri of school choice then crams down S.B.'s legitimate educational needs to only that of the government kind. And irrespective, BVLY will never acknowledge, as it declares in its memorandums, that S.B. would ever have a need to use religious materials for any purpose including reading, memorization, moral guidance, character modeling, history, or any number of any other educational purposes because of 72-3463.

BVLY asserts 72-3463 is duplicative of 1412(A)(10)(A)(VI)(II), §300.138(C)(2), and K.A.R. 91-40-48. ECF 126, p.26. If true then 72-3463 is superfluous and serves no purpose. BVLY is wrong. These federal statutes and this state regulation are facially Constitutional because they do not prohibit the activities listed in K.S.A. 72-3463. The lending of equipment to the Jefferson Parish could be accomplished in the midst of religious activities and did not "result in governmental indoctrination" or "impermissible content." *Mitchell v. Helms*, 530 U.S. 793, 829 (2000) (analyzing 20 U.S.C.§ 7372(a)(1) (services to private schools must be "secular, neutral, and nonideological")).

BVLY is obligated to offer and provide FAPE to S.B. – but without the religious use prohibitions of 72-3463. BVLY freely embraces 72-3463 such that the only way it says its delivery of services will follow S.B. is to parasitically attach its government curriculum with its 72-3463 prohibitions. BVLY's corrupts "public education" to only

mean "government curriculum" excluding 72-3463 activities when the IDEA makes no such demand of either. Public funding and supervision – not BVLY's government curriculum – is the only thing to follow S.B. wherever S.B. finds himself in the range of educational options. The IDEA does not require a private school to provide a government curriculum education at all as BVLY asserts (claiming it alone "controls the curriculum"). The IDEA makes no such government-controlled curriculum demand as to where the "general education curriculum" originates. State law creates an entitlement to services that the federal law does not provide.[1] Thus curriculum and curriculum standards are left to the state of Kansas. *See Hooks v. Clark County Sch. Dist.,* 228 F.3d 1036, 1040 (9th Cir.2000) (recognizing that a state defines permissible education curriculum). *See* 4 James A. Rapp, Education Law § 10.03[12][g] [vii] (2020) (recognizing IEP can be designed to make progress in student's private curriculum); *Fowler v. Unified Sch. Dist. No. 259*, 521 U.S. 1115 (1997) (Kansas law). Kansas gives school choice with its unique religious curriculums yet K.S.A. 72-3463 imposes a religious targeted carve out for that legitimate curriculum – which denies S.B. an "equal opportunity to participate in special education services." The IDEA does not authorize nor impose BVLY's cram down of government curriculum into any Kansas private religious school curriculum as a

---

[1] The term "general education curriculum" is not specifically defined in the IDEA. It is interpreted as "the same curriculum as for nondisabled children." 34 CFR §300.320(a)(1)(i). Curriculum for nondisabled children is determined under Kansas school choice law. Kansas state standards determine what curriculum counts as an appropriate education. *See Town of Burlington v. Dep't of Educ.,* 736 F.2d 773, 789 (1st Cir. 1984) (IDEA incorporates by reference state standards).

4

condition to receiving special needs services. BVLY cannot so easily convert the private education offered in a nongovernment school from *publicly funded* to its BVLY *government curriculum*.

BVLY not only knows better what Terri believes or what burdens her speech, it pulls another fantastic know-it-all assertion saying it knows better than Terri if S.B. is being homeschooled. BVLY proclaims that S.B.'s studies at home are illegitimate home school activities because they are "indistinguishable from the ordinary work of a parent reading to their child and helping him with homework assigned by the school he actually attends." ECF 126 p.16. Who says and so what? This means homeschooling activity cannot encompass privately tutoring a student? BVYL's made-up decree is a myopic "homework" view of what can actually take place in a private school called homeschool. S.B. being privately tutored on math and spelling from another curriculum is legitimate and not the only thing S.B. learns in his homeschooling. Kansas parents' preferences drive which curriculum is used to educate their children and how the IDEA public benefit is ultimately spent. BVLY's arguments about standing are meritless. In both *Carson* and *Espinoza*, the parents could still properly challenge the state law denying them the opportunity to use the tuition benefit at religious schools even though the funds went directly to the schools *See Carson*, 596 U.S. at 775-76, 789. What matters is the parent's practical ability to guide the use of the funds, not whether the funds are transferred to a parent's possession. BVLY claims that even though a parent chooses a private religious curriculum she nevertheless simultaneously still chooses that which she left –

5

BVLY's government curriculum – in order to receive special needs benefits. Neither the IDEA nor Kansas school choice law impose such a requirement.

BVLY urges the plain text of the IDEA should be ignored because private schools must also comply with numerous other special education regulations, some of which allow BVLY to supervise the nonpublic school or set certain standards. BVLY tosses in lengthy string-cites to government regulations, perhaps trying to prove their point by a flood of trifles. But as the plaintiff has already explained – and to which BVLY offers no response – such extensive regulations of private actors are hardly unique to the nonpublic school context. They are the bread-and-butter hallmarks of every modern government arrangement with private education institutions.

BVLY's uses its definition of "public" as used in the IDEA as a way to deny S.B. the full benefit of his IEP. BVLY says IDEA's reference to "public education" means more than public expense – that it means a government curriculum which can never meet all of the unique educational needs of an exceptional child. Besides having no historical foundation, BVLY thus wholly defines "unique education needs" in a hostile-to-religion fashion. The First Amendment recognizes that an American can have a religious need. Kansas recognizes this in school choice. It is an oxymoron to say that the same Kansas American cannot have an educational need for religion. But instead of rooting its purported justifications in the "historical practices and understandings" the Supreme Court requires, *Kennedy v. Bremerton School District*, 597 U.S. 507, 535 (2022), BVLY offers a series of out-of-date arguments that were expressly rejected in *Carson*. BVLY's elimination of religion from "unique

educational needs" has no historical basis: the Bible was used by Americans as the earliest of books to teach students. *See Morgan v. Plano Independent School Dist.,* 612 F.Supp.2d 750 (2009) (citing the New England Primer and stating "reference to God in a colonial classroom would be a familiar refrain to the founding fathers, in no way meriting latter day constitutional reprobation").

Why does Kansas provide for school choice if students don't have any need for religious curriculum? Couldn't Kansas recognize this as a "unique educational need" for these students as opposed to those parents who choose a government education? As the secular humanist BVLY proclaims itself to be, it simply dismisses as non-existent or illegitimate the notion that there can be any educational need focused on religion. BVLY is dead wrong on that.

BVLY also tries to wish away the holding in *Dreher v. Amphitheater Unified School District,* 22 F.3d 228 (9th Cir. 1994), by ignoring it: that the word "public" in FAPE is a term of art meaning "public expense," both in the government and private school setting. *Dreher's* interpretation of the word "public" was essential to its holding where parents sought reimbursement and the meaning of "public" formed a necessary part of the analysis because it explained why the parents could seek such reimbursement, even though their child currently attended a private school. *Id.* If BVLY was right that "public" only means "public schooling" or "government curriculum" then parents could never seek reimbursements for time spent in private schools after successfully showing a FAPE was denied. *See Bellflower Unified Sch. Dist. v. Lua,* 832 F. App'x 493, 496 (9th Cir. 2020) (permitting such reimbursements).

20 U.S.C. § 1401(a)(18)(A) defines "public" as "provided at public expense, under public supervision and direction." Similar to 34 C.F.R. § 104.34 it only presumes an "Educational Setting" and nothing more. § 1401(a)(18)(A) does not eliminate private religious curriculum as theorized by BVLY. BVLY rewrites Commissioner's Randall's testimony about making progress in a chosen curriculum in an effort to remove the conflict between his interpretation and Dr. Schmidt's. And consider the absurdity of this interpretation in S.B.'s part-time enrollment. S.B. can be part-timed enrolled in the BVLY School district simply to participate in athletics. S.B. is not required to take any of BVLY's general education classes. S.B.'s education curriculum would entirely be that of his religious private school. Yet BVLY asserts his IEP would not be modified to make progress in that private school's curriculum. What – BVLY would just make up an imaginary government curriculum for S.B. to make progress in that imaginary curriculum? The notion is absurd. The special needs services uniquely follow S.B. – not BVLY's government curriculum.[2]

BVLY does not hold a monopoly as to what defines "curriculum" or what a unique educational need is in the world of IDEA services. Kansas school choice should mean all students and all schools are created equal – private or the government kind. In substance, the special needs benefit is a subsidy for private education resulting from school choice. But not so for the Kansas exceptional child.

---

[2] Because benefits follow the student, BVLY cannot "blame a parent for its failure to ensure meaningful procedural compliance with the IDEA." *Doug C. v. Hawaii Dep't of Educ.,* 720 F.3d 1038, 1045 (9th Cir. 2013). This is because the "IDEA's protections are designed to benefit the student, not the parent." *Id.*

Private schools are not required to be an adjunct of BVLY's government curriculum in order for S.B. to receive his services. By adding school choice, integrated with the IDEA, both are designed to provide aid for all schooling including private school placement under limited oversight in which government has essentially "decided not to operate schools of its own, but instead to offer [financial] assistance that parents may direct" to the private school religious curriculum "of their choice." *Carson*, at 785.

BVLY considers 72-3463 a necessary marriage to IDEA because it thinks Kansas' private educational alternatives are the same as a wholesale outsourcing of BVLY's government curriculum. It is not. BVLY singles out for exclusion all of these educational benefits because of religion or reflect a religious worldview of educational need. BVLY's enforcement of 72-3463 and its insistence of overwriting its government curriculum upon the religious private school, has created by its interpretations a new specie called "government private school" which is an oxymoron. BVLY's application of 72-3463 is based upon an allocation of "benefits based on distinctions among religious, non-religious and religious recipients" which "are generally doomed from the start." *Am. Atheists, Inc. v. City of Detroit Downtown Dev. Auth.,* 567 F.3d 278, 289 (6th Cir. 2009). It "is discrimination against religion." *Carson* at 781.

Rather than being state adjuncts of BVLY, Terri and S.B. are private beneficiaries of a broadly available federal IDEA public benefit program that allows them to receive special needs services into a religious curriculum – that is until BVLY says it will not facilitate that result with its enforcement of 72-3463. This IDEA

program, administrated by BVLY, is corrupted by this school district. BVLY corrupts the program by making available to parents in its district a pool of public IDEA funds that parents can use in obtaining special needs services to educate their children without any ideological restrictions for most except with one glaring exception – parents cannot choose faith-based curriculum or materials – if to receive services. But while touting a commitment to parental choice and individualized learning, BVLY denies the benefit of those funds to Terri because she has exercised Kansas school choice as a religious family using faith-based materials from faith-based organizations that meet Kansas' educational standards for private schools.

Terri's deposition reflects that she has worked to identify instructional materials that are academically rigorous and incorporate a faith-oriented worldview. For example, BVLY would limit special needs services when S.B. uses *Bede's History of Me*, a book that introduces children to the basics of history (including the history of holidays, toys, and sports), because the product description states that the book provided a "clear way to teach the importance of timelines and how God works in time." In BVLY's mentality, that would be "religious curriculum."

BVLY ignores that public benefits are denied on many levels because of 72-3463. Through school choice the exceptional child can leave the Egypt of government school and its constrained humanistic "godless" curriculum. But not according to BVLY who proclaims it still "controls the curriculum" wielding the sword of 72-3463. That requires Terri to be a bondslave of Egypt: she must bring Egypt with her into her private school choice promised land. Only the IDEA benefits of public funds and

10

services – not government curriculum – are supposed to follow the student into the non-government school arena. Those public funds programs, parents may access public funds to choose curricula and instructional material that align with their preferences in order to better educate their children at "home," "hospitals," or all other facilities called the promised land of private schools, accredited and non-accredited private schools. That is a public benefit. The fact that these funds aren't given in the form of grants is immaterial to the constitutional analysis and flies in the face of numerous Supreme Court precedents that didn't involve grants at all. *See Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.,* 508 U.S. 384 (1993).

For example, what if Kansas enacted a statute prohibiting special needs services if it requires female students to wear skirts to school based on the view that girls are "fragile vessels" deserving of "gentle treatment" by boys.[3] Parents who chose this school could not receive the special needs benefits. Or a statute prohibiting special need services during "athletic" or "recreational" activities which exclude genders competing against other. Parents could choose private schooling to avoid the government school's imposition of boys competing as girls. But now an essential benefit of school choice is degraded. Consider a statute that prohibited services to any activity in which the school required pronouns not to be aligned with the biological gender of the student. The public benefit of school choice is eviscerated as well as favoring those schools who comply. Similarly, BVLY's application of 72-3463

---

[3] Imposing such a requirement in *Peltier v. Charter Day School, Inc.,* 37 F.4th 104 (4th Cir. 2022).

11

essentially disembowels the benefit of Kansas school choice for parents choosing a religious kind of curriculum while favoring those parents who choose a kind of government education in either private or government education choice. It cannot follow that a private school must conduct its curriculum wearing the straight jacket of a government school. Terri is not required to conduct herself as an extension or *defacto* assistant of BVLY's government-style curriculum. According to BVLY, despite school choice, Kansas has delegated to all parents of exceptional children to educate their exceptional child in all ways as the government school would – that is, if special needs services are to be obtained. 72-3463's two-tier service restriction is a total evisceration of the benefit of school choice. *Loffman*, citing *Carson*, rejected the argument that Jewish seeking to place their children in Jewish schools was foreclosed by California's characterization of private school education as "public education" defined as a government curriculum.

Kansas intentionally puts religious families on unequal footing. In school choice, as well as the IDEA, parents have broad autonomy to choose curricula for their children – provided that they are not religious. Kansas has deliberately expanded the options of secular families, while limiting them for religious ones. Finally, and perhaps most egregiously, Kansas cannot reject S.B.'s work or punish him with BV's denial of services because the student's work contains religious material. That is another effect of K.S.A. 72-3463. Putting aside private schools, this kind of blatant discrimination would be constitutionally impermissible in any government setting. *In Good News Club v. Milford Central School*, a Christian

organization was denied access to a public school due to their religious nature and message. 533 U.S. 98 (2001). Additionally, BVLY has not, and cannot, show that its use of 72-3463 as a blanket prohibition of nonsecular opinions, ideas, or references is "necessary to avoid material and substantial interference" with the purpose of the IDEA. *Id.* Under K.S.A.72-3463 BVLY rejects all of S.B.'s work as a legitimate educational goal because it contains religious themes. *See Kennedy* (Free Exercise and Free Speech protect individuals engaging in religious expression and Constitution does not permit its suppression); *Shurtleff v. City of Boston,* 596 U.S. 243 (2022) (Christian flag discrimination); *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819 (1995) (impermissible to ban discussion of subject from religious viewpoint); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.* 508 U.S. 384 (1993) (same). 72-3463's intentional targeting of religious activity "is not required for a governmental policy to violate the Free Exercise Clause," instead the mere favoring of "comparable secular activity is sufficient." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.* 82 F.4th 664, 686 (9th Cir. 2023); *Young Israel of Tampa, Inc. v. Hillsborough Area Reg'l Transit Auth.*, 89 F.4th 1337 (11th Cir. 2024) (ban on all religious advertising was unreasonable and violated the Free Speech Clause). By allowing BVLY to reject S.B.'s "non-secular" work in its religious-activity denial of special needs services, BVLY is enabling egregiously unconstitutional viewpoint discrimination. On the one hand Kansas school choice offers parents a wide variety of choices about how to educate their own children. And unlike in a traditional classroom-based government school, each family can choose its own

curriculum, making each home a school unto itself. The Free Speech and Free Exercise Clauses provide "double protection" for such religious expression. *Kennedy*, at 540. Terri's instruction of her child in her chosen private school, even in her own "home" with her preferred instructional materials, is her "private speech," not "government speech." *Rosenberger* at 841.

Viewpoint discrimination applies with full force to educational funding programs, which must comport with a "requirement of viewpoint neutrality in the Government's provision of financial benefits." *Rosenberger*, at 832, 834 (could not refuse to disburse activity funds to a student magazine with a Christian editorial viewpoint because of its "religious speech"). The same logic applies to IDEA overseen by the Kansas Commissioner. By offering government benefits to parents who exercise school choice and using curriculum and curricular materials of their choice, except those reflecting a faith-based worldview, BVLY engages in viewpoint discrimination. *See Lamb's Chapel*, at 393 ("discriminates on the basis of viewpoint to permit school property to be used for the presentation of all views about family issues and child rearing except those dealing with the subject matter from a religious standpoint"); *Good News Club*, at 114 ("[the school district] faces an uphill battle in arguing that the Establishment Clause compels it to exclude the [Christian] Club").

BVLY contorts the law of standing beyond all recognition, claiming that Plaintiffs must prove that they will ultimately obtain benefits, despite clear holdings from the Supreme Court that the identification of a categorical discriminatory barrier is enough. And since BVLY concedes the existence of that discriminatory barrier,

14

they concede standing as well. BVLY is wrong on the law from start to finish. And its mishmash cannot obscure the underlying reality of this case: the IDEA has created a public benefit that BVLY categorically and permanently excludes otherwise-eligible religious families and schools with its interpretations. That is both morally wrong and unconstitutional. BVLY's tepid defense citing outdated *Lemon* cases also speaks to the useless utility of K.S.A. 72-3463 as well as its illegitimate targeting of religion. BVLY does not "control the curriculum" in the private school realm because it creates an IEP or delivers services into a private school curriculum. All Kansas parents are allowed to leave the Egypt of government curriculum through private school choice – except for Terri who, according to BVLY, must bring Egypt with her. This Court must eradicate this endemic flaw in BVLY's delivery of services by declaring K.S.A. 72-3463 unconstitutional. The Court should declare BVLY's interpretation of U.S.C. § 1412(A)(10)(A)(Vi)(II), 34 C.F.R. § 300.138(C)(2), and K.A.R. 91-40-48 as prohibiting the activities of K.S.A. 72-3463 as erroneous. BVLY is wholly mistaken. Grant the plaintiff's Partial Motion for Summary Judgment.

| | |
|---|---|
| /s/Linus L. Baker KS 18197<br>6732 West 185th Terrace<br>Stilwell, Kansas 66085<br>Telephone:   913.486.3913<br>Fax:             913.232.8734<br>Email: linusbaker@prodigy.net<br>Attorney for the plaintiffs | **CERTIFICATE OF SERVICE**<br><br>On this 13th day of December, 2024, the above document was filed with the Court's CM-ECF system which will provide notice to all counsel of record.<br>/s/Linus L. Baker<br>Linus L. Baker |